ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN CARTER, et al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | 1:CV-00-0834 |
| | : | |
| **MARTIN HORN, COMMISSIONER,** | : | (Judge Caldwell) |
| **DEPT. OF CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

FILED
HARRISBURG, PA

JUL 1 9 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

**DOCUMENTS IN SUPPORT OF
COMMONWEALTH DEFENDANTS' MOTION TO DISMISS**

**D. MICHAEL FISHER**
**Attorney General**

**SETH A. MENDELSOHN**
**Deputy Attorney General**
**Attorney ID# 77063**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg PA 17120
(717) 787-1194
(717) 772-4526 FAX
smendelsohn@attorneygeneral.gov

**DATE:   JULY 19, 2000**

**EXHIBIT "A"**

--- F.Supp.2d ----
(Cite as: 2000 WL 863111 (E.D.Pa.))

Page 1

**Ali AHMED, (Hiram McGill) Plaintiff,**
v.
**Joseph SROMOVSKI, et al., Defendants.**

No. CIV. A. 98-2548.

United States District Court, E.D. Pennsylvania.

June 27, 2000.

EXPLANATION & ORDER

BRODY.

*1 Plaintiff Ali Ahmed ("Plaintiff"), an inmate at the State Correctional Institution at Mahanoy ("Mahanoy") filed this action under 42 U.S.C. § 1983 alleging that Corrections Officer Joseph Sromovski and Sergeant John Eichenberg ("Defendants") violated his Eighth Amendment right to be free from cruel and unusual punishment on April 3, 1998 while plaintiff was housed in the Restrictive Housing Unit ("RHU") at Mahanoy. [FN1] Defendants have filed a motion for summary judgment and a supplemental motion for summary judgment.

I. PROCEDURAL HISTORY

Plaintiff filed a motion to proceed in forma pauperis on May 15, 1998. On May 20, 1998, this case was closed for failure to comply with filing fee requirements and reinstated on July 29, 1998. Plaintiff filed a pro se complaint on July 29, 1998. On September 14, 1998, defendants filed a motion to dismiss plaintiff's complaint. Defendants asserted that because plaintiff's complaint failed to allege that he had exhausted his available administrative remedies, his complaint must be dismissed without prejudice pursuant to Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In that motion, defendants contended that exhaustion of administrative remedies requires completion of the three-step formal grievance procedure set forth in the Pennsylvania Department of Corrections Consolidated Inmate Grievance Review System, DC-ADM 804. On September 18, 1998, plaintiff filed an opposition to defendants' motion. Plaintiff stated that he had filed a grievance on April 8, 1998 "to which nothing was accomplished." On January 7, 1999, plaintiff filed "a motion to amend his motion in opposition to defendants' motion." In that

motion, plaintiff asserted that on September 17, 1998, he appealed the denial of his grievance to Superintendent Dragovich and on October 6, 1998, he appealed Dragovich's response to final review. [FN2] On February 1, 1999, I granted plaintiff's motion for appointment of counsel [FN3] and denied defendants' motion to dismiss. Defendants filed an answer and affirmative defenses on February 8, 1999. Defendants asserted, as an affirmative defense, that plaintiff had failed to allege any facts that warrant relief pursuant to the PLRA.

On November 8, 1999, defendants filed a motion for summary judgment. Plaintiff filed a reply on December 7, 1999. Following the United States Court of Appeals for the Third Circuit's February 15, 2000 decision in Nyhuis v. Reno, 204 F.3d 65 (3d Cir.2000), in which the court addressed the PLRA's exhaustion requirement, defendants filed a supplemental motion for summary judgment, arguing that plaintiff had failed to exhaust his available administrative remedies. [FN4] Plaintiff responded to defendants' supplemental motion on April 17, 2000. On April 28, 2000, defendants filed a reply to plaintiff's response.

II. FACTS

The incident at issue in this case occurred on April 3, 1998 when plaintiff was housed in A Pod, Cell 7 in the RHU at Mahanoy. [FN5] On that date, defendant Eichenberg was one of six officers assigned to the RHU exercise crew. [FN6] Defendant Sromovski was assigned to work on A Pod on the 6:00 a.m. to 2:00 p.m. shift. In the early morning of April 3, 1998, before the incident took place, plaintiff and defendant Sromovski argued briefly. Defendant Sromovski gestured to plaintiff with his middle finger, in response, plaintiff yelled profanities at defendant Sromovski and made sexual comments about defendant Sromovski's wife. Pl. Dep. 147, 152-53. After the dispute ended, plaintiff cleaned his cell and took a nap. Id. Pl. Dep. 155-56. Although plaintiff had signed up for yard exercise, plaintiff did not go because he wanted to clean his cell. Id. Later that morning, defendant Eichenberg, as part of the exercise crew, began escorting inmates from the yard to their cells on A Pod. Defendant Sromovski assisted with this process.

*2 According to plaintiff, he was awakened by the sound of his cell door opening. Pl. Dep at 164.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

--- F.Supp.2d ----
(Cite as: 2000 WL 863111, *2 (E.D.Pa.))

From his bed, plaintiff saw defendant Eichenberg and defendant Sromovski talking; defendant Sromovski was standing in the doorway. Pl. Dep. at 167-70. Then defendant Sromovksi said to plaintiff "What's up, come on out, pussy." Pl. Dep at 171. Plaintiff responded, "I said get out of my cell, leave me the fuck alone." Pl. Dep. at 171. Plaintiff then got out of bed and pulled his jumpsuit up to his waist, tying the sleeves around his waist. Defendant Sromovski repeated, "What's up, come on out, pussy" and called plaintiff "a fake fucking Muslim." Pl. Dep. at 175. As Sromovski came into plaintiff's cell, plaintiff moved forward slightly because he believed that Sromovski was going to hit him. Pl. Dep. at 186-87. According to plaintiff, defendant Sromovski then punched him in the face and pushed him, with two hands, into a metal desk. Pl. Dep. at 191-94. Plaintiff fell to the floor. Defendant Sromovski left plaintiff's cell and defendant Eichenberg closed the cell door.

As a result of the alleged attack, plaintiff asserts that he suffered injuries including a lower back injury and a pulled muscle in his neck. After plaintiff fell, he could not get up because his lower back hurt when he moved. Pl. Dep. at 193, 199-200, 205-09. Plaintiff requested to see a member of the medical staff and receive medical treatment for his back and neck pain. Pl. Dep. at 196-97; 211. Shortly after plaintiff made this request, a nurse arrived at plaintiff's cell to examine him. Pl. Dep. at 212. Plaintiff told the nurse that he could not move because of neck and back pain. Pl. Dep. at 226. A stretcher was brought to plaintiff's cell and he was carried to the infirmary on the stretcher. Pl. Dep. at 216, 228. After arriving at the infirmary, plaintiff was examined by Dr. Hipps, the prison physician, and admitted for observation. Dr. Hipps ordered that plaintiff be given non-prescription Tylenol and that X-rays be taken of plaintiff's lower back. Dr. Hipps diagnosed plaintiff with a neck strain and also noted a mild contusion on plaintiff's back. After plaintiff was released from the infirmary, plaintiff returned to his cell and ordered to "lay in" or stay still in his cell for four days. Plaintiff maintains that he suffered constant back pain during the week following the incident. As a result of his pain, plaintiff made numerous requests that he be examined by a back specialist. Currently, plaintiff alleges that he experiences a few seconds of pain approximately six times a day. Pl. Dep. at 247-48; 260. According to plaintiff, he suffers back pain as a result of the use of excessive force by Sromovski and did not suffer from back pain prior to April 3, 1998. Pl. Dep. at 246-47.

Following the April 3, 1998 incident, a misconduct was filed against plaintiff by defendant Sromovski for assaulting an officer; specifically for charging Sromovski in an aggressive manner. Defs. Mot. Summ. J. Ex. C. Attach. P-15. After a misconduct hearing, plaintiff was found guilty and sanctioned to disciplinary custody time. [FN7]

*3 On April 8, 1998, plaintiff filed a grievance (MAH-134-98) regarding the April 3, 1998 incident. [FN8] Defs. Suppl. Mot. Summ. J. at Ex. H-2. On April 23, 1998, a grievance coordinator responded to plaintiff's grievance and stated that following an investigation of the incident, the grievance coordinator determined that plaintiff's claims lacked merit. [FN9] See id. at Ex. H-3. Plaintiff did not appeal this response to Superintendent Dragovich ("Dragovich") until September 16, 1998. See id. at Ex. H-4; Bitner Decl. at ¶ 10. One day later, Dragovich responded that he was returning plaintiff's appeal as untimely. Defs. Suppl. Mot. Summ. J at Ex. H-5; Bitner Decl. at ¶ 11. Dragovich explained that plaintiff's "original grievance was filed on 4/8/98 and responded to on 4/23/98. You have five days in which to file your appeal with this office and it is now five months later." [FN10] Defs. Suppl. Mot. Summ. J. at Ex. H-5. In that response, Dragovich also stated that "[f]or the record" an internal investigation concluded that plaintiff's claim was without merit. Id. On September 18, 1998, plaintiff appealed to the Central Office Review Committee ("CORC"). See id. at Ex. H-6. Chief Hearing Examiner for the Pennsylvania Department of Corrections, Robert Bitner ("Bitner") responded to plaintiff's appeal on October 6, 1998, stating that plaintiff had failed to file a timely appeal of the response to his grievance. Bitner at ¶¶ 10, 11. Therefore, plaintiff had "failed to complete appeal to the Superintendent as required pursuant to DC-ADM 801(sic). [FN11] Accordingly, [plaintiff's] appeal to final review cannot be accepted and must be dismissed." See id. at Ex. H- 7; Bitner Decl. ¶ 13. Plaintiff testified that he was familiar with the grievance system and "use[d] it a lot." Pl. Dep. at 95.

On April 14, 1998, Superintendent Dragovich wrote to plaintiff, informing him that Dragovich was

--- F.Supp.2d ----
(Cite as: 2000 WL 863111, *3 (E.D.Pa.))

placing plaintiff on grievance restriction pursuant to Section V.C. of DC-ADM 804. [FN12] Pl. Resp. at Ex. 3. In the letter, Dragovich explained that because plaintiff's use of the grievance system was considered "excessive," plaintiff would be "limited to filing one grievance per month." Id. Dragovich noted that plaintiff filed eighteen grievances between June 13, 1997 and April 9, 1998. Id. Six of those grievances were filed during "the past 6 weeks" and five during a recent eleven day period. Id. Dragovich calculated that the grievances filed by plaintiff made up 4.4% of all grievances filed by inmates at Mahanoy during the June 1997 to April 1998 time period. Id. The letter also noted "there are indications that you are exhorting other inmates to file similar complaints and to corroborate your false claims." Id. In addition, Dragovich stated "[y]ou are to give staff their entitled 5 days to respond to [inmate] requests and 10 working days [to respond] to grievances before processing the next level." Id.

## III. DISCUSSION

*4 Defendants argue that plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) mandates dismissal of this action. [FN13] I will now evaluate defendants' argument that plaintiff failed to exhaust his available administrative remedies because the PLRA exhaustion requirement "can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit." Perez v. Wisconsin Department of Corrections, 182 F.3d 532, 536 (7th Cir.1999). [FN14] Therefore, "the court must not proceed to render a substantive decision until it has first considered § 1997e(a)." Id. [FN15]

Failure to Exhaust Administrative Remedies

The PLRA provides, in relevant part, that:
  No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.
42 U.S.C. § 1997e(a).

Before filing a federal lawsuit concerning an excessive force claim, a plaintiff-inmate must

exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir.2000). Section 1997e(a) " 'specifically mandates' that inmate-plaintiffs exhaust their available administrative remedies." Nyhuis, 204 F.3d at 73 (internal citations omitted). Therefore, "it is beyond the power of this court ... to excuse compliance with the exhaustion requirement...." Id. Accordingly, the Third Circuit has articulated "[o]ur bright line rule is that inmate-plaintiffs must exhaust all available administrative remedies." Nyhuis, 204 F.3d at 75. However, "[c]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." [FN16] Id. at 77-78. See also Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir.1999) (applying the substantial compliance doctrine, determining that although plaintiff did not appeal an initial review of his grievance, plaintiff had exhausted his administrative remedies as he was told "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal. The above listed grievance(s) is closed"). Dismissal of a plaintiff's complaint without prejudice is appropriate when an plaintiff-inmate has failed to exhaust his available administrative remedies before bringing an action under § 1983. See Booth, 206 F.3d at 300.

The Pennsylvania Department of Corrections has established the Consolidated Inmate Grievance Review System, DC-ADM 804. Section VI, entitled "Procedures," sets forth a three-step grievance procedure for use following attempted informal resolution of the problem. See DC-ADM 804 Section VI. [FN17] To exhaust all available administrative remedies, a prisoner must complete the three stages of review provided by DC-ADM 804. See e.g., Booth, 206 F.3d at 299 (stating that plaintiff "did not take full advantage of the administrative procedures available to him ..." when plaintiff did not use steps two and three of DC-ADM 804; appeals to intermediate and final review); Jenkins v. Morton, 148 F.3d 257, 259 (3d Cir.1998) (discussing California and New Jersey Department of Corrections grievance procedures similar to DC-ADM 804 and stating that "[o]nly after plaintiff has gone through each of these steps may he be said to have exhausted his available administrative remedies) (internal citations omitted); Bey v. Pennsylvania Department of Corrections, No. 98-4212, 2000 WL 718171 *8-*9 (E.D.Pa. May 31,

--- F.Supp.2d ----
(Cite as: 2000 WL 863111, *4 (E.D.Pa.))

Page 4

2000); Jones v. Vaughn, No. 00- 1662, 2000 WL 565214 * 1 (E.D.Pa. May 2, 2000); and McCoy v. Scott, No. 97- 0472, 1997 WL 414185 *2 (N.D.Cal. July 15, 1997) (stating that to exhaust administrative remedies, plaintiff must pursue his claim through the third level of review under the California Code of Regulations). From the record before me, plaintiff has not exhausted his administrative remedies. I will first discuss that plaintiff did not complete all three steps of DC-ADM 804 prior to filing his complaint in this court. I will then address plaintiff's arguments that even though his appeals were not timely under DC-ADM 804, he substantially complied with DC-ADM 804.

**\*5** Plaintiff filed his complaint in federal court before completing the three-part formal grievance procedure set forth in DC-ADM 804

Although not specifically raised by either party, a review of the record indicates that plaintiff filed this case prior to appealing the initial determination of his grievance to the second and third level of review as required under DC-ADM 804. On April 8, 1998, plaintiff filed a grievance regarding the April 3, 1998 incident. On April 23, 1998, plaintiff received a response to his grievance. On May 18, 1998, plaintiff filed a motion to proceed in forma pauperis in this court. On July 29, 1998, plaintiff was granted leave to proceed in forma pauperis. On that date, his complaint was filed in which plaintiff alleged that, on April 3, 1998, defendants violated his Eighth Amendment rights. However, plaintiff did not appeal the initial review of his grievance to Supt. Dragovich until September 16, 1998. Two days later, plaintiff appealed Dragovich's response to final review. Therefore, plaintiff brought this action before exhausting his administrative remedies under DC-ADM 804.

This scenario is precisely what § 1997e(a) seeks to prevent. See e.g., Hattie v. Hallock, 16 F.Supp.2d 834, 836 (N.D.Oh.1998) (dismissing plaintiff's complaint without prejudice when plaintiff did not exhaust his administrative remedies until two months after the lawsuit was filed and stating this is exactly what the PLRA prohibits). The Third Circuit has interpreted § 1997e(a) as establishing a bright line rule; "we are not prepared to read ... § 1997e(a) as meaning anything other than what it says--i.e., that no action shall be brought in federal court until such administrative remedies as are available have been

exhausted." Nyhuis, 204 F.3d at 78. When plaintiff filed his action here in federal court, he had satisfied only the first part of DC-ADM 804; submitting a written grievance for initial review. Accordingly, plaintiff did not exhaust his available administrative remedies before bringing this lawsuit as required by § 1997e(a). See Booth, 206 F.3d at 292-93, 299. Because plaintiff did not exhaust prior to filing his complaint in federal court, plaintiff's complaint must be dismissed without prejudice unless he has substantially complied with his administrative remedies under DC-ADM 804.

Substantial compliance

Plaintiff's substantial compliance argument, however, does not address why he did not complete steps two and three of DC-ADM 804 prior to filing his federal complaint. Instead, plaintiff contends that although he has filed untimely appeals to intermediate and final review, he has "substantially complied" with DC-ADM 804. For the reasons set forth below, plaintiff's substantial compliance argument fails.

First, plaintiff concedes that he appealed the initial determination of his grievance to Superintendent Dragovich on September 16, 1998, five months after receiving the response on April 23, 1998. However, DC-ADM 804 provides that if an inmate is unsatisfied with the initial response to his grievance, he must appeal to intermediate review personnel "within five (5) days from the date of receipt by the inmate of the Initial Review decision." DC-ADM 804 VI.C.2. See also Bitner Decl. at ¶ 10. "Final review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review." Id. at D.2. In general, courts have required strict compliance with formal grievance procedures. See e.g., Petit v. Bender, No. 99-969, 2000 WL 303280, *2-3 (S.D.N.Y. March 22, 2000) (stating that by writing a letter to the Commissioner objecting to the Superintendent's decision, rather than appealing that decision to the CORC, plaintiff did not satisfy the third step of the grievance procedure, and therefore, plaintiff did not exhaust his administrative remedies); Rankins v. Murphy, No. 98-1669, 1998 WL 767441 *1 (E.D.Pa. Nov.3, 1998) (determining that plaintiff did not exhaust his administrative remedies because plaintiff filed an appeal to the CORC before appealing to the

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

--- F.Supp.2d ----
(Cite as: 2000 WL 863111, *5 (E.D.Pa.))

Superintendent as required by DC-ADM 804).

*6 Moreover, DC-ADM 804 provides that an exception for good cause exists regarding the requirement that an inmate comply with initial review and appeal of initial review procedures prior to seeking final review. [FN18] However, nothing in the record suggests that plaintiff attempted to use this provision. See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir.1999) (holding that plaintiff did not exhaust his administrative remedies because he filed an untimely grievance and had not requested leave to file out-of-time for good cause).

In support of his substantial compliance argument, plaintiff first refers to the April 14, 1998 letter in which Dragovich informed plaintiff that he was limited to filing one grievance per month. [FN19] Plaintiff claims that plaintiff "may have failed to file his appeal within the policy's time limits" because the language of the letter does not clearly outline the procedures plaintiff could use to appeal. Furthermore, plaintiff asserts that the letter "may have made it unclear to [plaintiff] whether he was entitled to appeal at all."

Although plaintiff contends that he "may have" failed to file a timely appeal because of confusion regarding the reach of the grievance restriction, nothing on the record supports this contention. First, review of the April 14, 1998 letter indicates that the grievance restriction did not restrict plaintiff's right to appeal, "[y]ou are to give staff their entitled 5 days to respond to [inmate] requests and 10 working days [to respond] to grievances before processing the next level." Under DC-ADM 804, a grievance officer must respond to an inmate grievance within ten days; then if plaintiff is unsatisfied by the response, he may appeal within five days. DC-ADM 804 VI. B.2, C.2. Second, plaintiff has not testified that his failure to file timely appeals was caused by a lack of clarity regarding the scope of the grievance restriction. Third, plaintiff testified that he is familiar with the DC-ADM 804 procedures and frequently uses the grievance system. Pl. Dep. at 95. Therefore, the record suggests that plaintiff was aware that DC-ADM 804 required him to file an appeal of the initial response within five days of receipt of the decision and plaintiff's untimely appeals were not a result of his placement on grievance restriction.

Furthermore, a strong inference exists that plaintiff filed his appeals only to keep his federal claim alive. The record suggests that only after receiving defendants' motion to dismiss did plaintiff file an appeal to the Superintendent for intermediate review, and file an appeal to CORC for final review. In defendants' motion dated September 14, 1998, defendants asserted that in order to exhaust administrative remedies, a inmate is required to complete all three steps of the grievance procedure set forth in DC-ADM 804. Two days later, on September 16, 1998, plaintiff appealed the initial determination of his grievance to Dragovich. On September 18, 1998, plaintiff filed an appeal with the CORC. This is contrary to the policy considerations underlying the PLRA's exhaustion requirement and the spirit of Nyhuis. [FN20]

*7 In this case, plaintiff filed this suit prior to filing an appeal of the initial grievance response to the Superintendent and to the CORC for final review. Moreover, plaintiff failed to comply with the procedures set forth by DC-ADM 804 for filing appeals to intermediate review and to final review. Therefore, plaintiff has failed to exhaust his available administrative remedies as required by the PLRA. Nyhuis has made clear that bright line rule is that inmate must exhaust his administrative remedies prior to filing an action in federal court. "The bright line rule that we adopt makes things clear for inmates ... Our bright line rule is that inmate-plaintiffs must exhaust all available administrative remedies ." Nyhuis, 204 F.3d at 75. Based on the record before me, I find that plaintiff has not exhausted his available administrative remedies. Accordingly, I will dismiss plaintiff's complaint without prejudice for failure to exhaust his available administrative remedies pursuant to 42 U.S.C. § 1997e(a). Therefore, I will not evaluate the merits of plaintiff's Eighth Amendment claims against defendants Sromovski and Eichenberg.

AND NOW, this ___ day of June, 2000, IT IS ORDERED that:
. Defendants' supplemental motion for summary judgment (Docket Entry No. 35) is GRANTED;
. Because defendants' supplemental motion is granted, defendants' motion for summary judgment (Docket Entry No. 30) is RESOLVED AS MOOT; and
. Plaintiff's complaint is DISMISSED without prejudice.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

--- F.Supp.2d ----
(Cite as: 2000 WL 863111, *7 (E.D.Pa.))

FN1. Plaintiff also sued Superintendent Dragovich, Secretary Horn, and Lieutenant Mahally. On July 28, 1998, I dismissed plaintiff's claims against these defendants as frivolous.

FN2. The record indicates that the actual dates of plaintiff's appeals are September 16, 1998 and September 18, 1998. Defs.Suppl.Mot.Summ.J at Ex. H- 4, H-6.

FN3. Wendy Bettlestone, acting pro bono, represented Mr. Pearson. I appreciate the high quality of submissions filed with this court by Ms. Bettlestone on Mr. Pearson's behalf.

FN4. In their supplemental motion, defendants explained that the November 1999 motion for summary judgment addressed the merits of plaintiff's claims, however, the supplemental motion addressed only plaintiff's failure to exhaust. In light of Nyhuis, they believed a supplemental motion was necessary.

FN5. Plaintiff testified that he was housed in disciplinary custody because of inmate misconducts issued against him. Pl.Dep. at 28-29, 33.

FN6. The other five officers assigned to the exercise crew were Officers Friendly, McNeal, Shoemaker, Storm, and McNich.

FN7. Plaintiff appealed this misconduct to two levels of appeal. The sanction was affirmed at both levels.

FN8. Additionally, on May 22, 1998, plaintiff filed a complaint with the Schuylkill County District Attorney alleging that defendant Sromovski assaulted him. Plaintiff's complaint was then sent to the DOC Office of Professional Responsibility for investigation. That office forwarded the complaint to Mahanoy. On June 26, 1998, a report was issued, summarizing staff accounts of the incident and concluding that no further action was necessary. Pl.Resp. at Ex. 2.

FN9. The grievance officer stated that after reviewing written reports and interviewing witnesses, he determined that plaintiff had charged his door and attempted to assault defendant Sromovski. He stated that Sromovski used the amount of force necessary to push plaintiff back into his cell. (Ex. H- 3). He also noted that the nurse who examined plaintiff said that he did not have any injuries.

FN10. Under DC-ADM 804, plaintiff must appeal a grievance response within five days of receipt of the decision. Bitner Decl. at ¶ 10.

FN11. In Bitner's response, he referred to DC-ADM 801, the administrative procedure which addresses inmate misconducts. However, when quoting the October 6, 1998 response letter in his declaration, Bitner includes "(sic)" following the reference to DC-ADM 801. Bitner Decl. at ¶ 13. In his declaration, Bitner refers only to DC-ADM 804 when discussing plaintiff's failure to appeal to final review. Bitner Decl. at ¶ 10. Therefore, it appears that Bitner intended to refer to DC-ADM 804 in his response.

FN12. At his September 1999 deposition, plaintiff testified that he believed he was "still on" grievance restriction. Pl.Dep. at 95. When asked if he had been restricted for over a year, plaintiff stated that he was not sure how long he had been restricted. See id.

FN13. Plaintiff asserts that failure to exhaust administrative remedies is an affirmative defense. Plaintiff argues that defendants did not raise the exhaustion issue in their answer, and thus, defendants have waived this defense. However, in their answer filed February 9, 1999, defendants asserted that "Pursuant to the Prison Litigation Reform Act, plaintiff has failed to allege any facts which would warrant relief." In their motion to dismiss filed September 11, 1998, defendants moved to dismiss plaintiff's complaint for failure to exhaust administrative remedies. In addition, the Third Circuit has not articulated whether the PLRA exhaustion requirement is an affirmative defense or a condition precedent to filing. Cf. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir.1997) (holding that in the context of a Title VII case, the failure to exhaust administrative remedies is an affirmative defense).

FN14. The Third Circuit has determined that the PLRA's exhaustion requirement is not jurisdictional. See Nyhuis, 104 F.3d at 69 n. 4 (noting that the Fifth, Sixth, Seventh, and Tenth Circuits have also held that § 1997e(a) is not a jurisdictional requirement).

FN15. Defendants address the merits of plaintiff's claims in their November 1999 motion for summary judgment. Because, as discussed in this order, I determine that plaintiff has failed to exhaust his administrative remedies as required by

the PLRA, I will not address the merits of plaintiff's claims. See Nyhuis, 204 F.3d at 78 (affirming the dismissal of plaintiff's complaint for failure to exhaust, but vacating the portion of the district court's opinion addressing the merits of plaintiff's claims explaining that the Magistrate Judge should not have reached the merits of plaintiff's action).

FN16. In defendants' Reply to Plaintiff's Supplemental Response, defendants incorrectly assert that "[n]owhere in Nyhuis does the Court promote a substantial compliance exception to the PLRA." Defs. Reply to Pl.Supp.Resp. at 5 (unpaginated).

FN17. First, a plaintiff-inmate must file a written grievance for initial review to the Facility/Regional Grievance Coordinator within fifteen days after the events upon which the grievance is based. See DC-ADM 804 VI. B.2. Extensions of time may be granted for good cause. See id. Within ten working days of receipt of the grievance by the Grievance Officer, "the grievant shall be provided a written response to the grievance...." See id. at B.4. Second, an inmate may appeal this initial determination, in writing, to the Facility Manager/ Community Corrections Regional Director within five days from the inmate's receipt of the decision. "The inmate must appeal in this manner prior to seeking Final Review." (emphasis in original). Id. at C.2. The intermediate review personnel have ten working days to notify the inmate of the decision. See id. at C.4. Third, an inmate may appeal the disposition of an appeal from initial review to the Central Office Review Committee ("CORC") within seven days of receiving the decision. See id. at D.1. "Final review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause." Id. at D.2. The CORC must issue a decision within twenty- one days after receipt of an inmate's appeal. See id. at D.7.

FN18. In their reply, defendants assert that under DC-ADM 804 extensions of time in which an inmate can file an appeal may also be granted for good cause. Defs. Reply at 4 (unpaginated). Although DC-ADM 804 clearly provides for an extension of time in which an inmate can file a grievance, it does not clearly articulate whether such extensions are available for the filing of an appeal to intermediate review.

FN19. Plaintiff raises three additional arguments in support of his contention that he substantially

complied. First, plaintiff asserts that in Dragovich's response to plaintiff's appeal of the denial of his grievance, Dragovich refers to the investigation of plaintiff's claims. Plaintiff argues that this response indicates that Dragovich himself treated plaintiff's appeal as if it was in substantial compliance with DC-ADM 804 procedures. Although Dragovich mentions "for the record" that an investigation concluded that plaintiff's claims lacked merit, he clearly states that he is returning the appeal because it was untimely. In fact, in his response to defendants' supplemental motion for summary judgment, plaintiff notes that Dragovich "stated simply that [plaintiff's] appeal ... was untimely." Pl.Resp. at 5.
Second, plaintiff contends that plaintiff has exhausted his administrative remedies because the grievance coordinator did not comply with DC-ADM 804. Under DC-ADM 804, a grievance coordinator must respond to an inmate grievance within ten "working days" of receipt of the grievance. DC-ADM 804 VI.C.4. In this case, plaintiff did not receive a response to his initial grievance until April 23, 1998, fifteen days after his grievance filed April 8, 1998. Therefore, this response was timely only if "working days" does not refer to weekend days. Plaintiff argues that working days should include weekend days and if so, the grievance coordinator did not respond in a timely manner and plaintiff's grievance should be deemed exhausted. I do not find this argument persuasive.
Third, plaintiff refers to the exhaustion requirement under the habeas statute, 28 U.S.C. § 2254(b) and (c) which requires that a petitioner exhaust state appeals prior to filing a claim in federal court. Plaintiff argues that, in habeas cases, courts have determined although a petitioner's state appeals were untimely, the petitioner has substantially complied with the exhaustion requirement. Caselaw applying the substantial compliance doctrine in the PLRA context has yet to develop. I am reluctant to apply the doctrine as applied in habeas cases to cases such as this one. See e.g., Perez v. Wisconsin Department of Corrections, 182 F.3d 532, 536 (7th Cir.1999) (determining that Section 1997e(a) "has a very different structure, as a ban on the bringing of a suit (a structure the exhaustion requirement in the law of collateral attacks never had")); Naadi v. Hill, 106 F.3d 275, 277 (9th Cir .1997) (noting that habeas corpus is "dramatically different from any other type of civil action") (internal citations omitted); and Martin v. United States, 96 F.3d 853, 855 (7th Cir.1996) (noting that "postconviction relief and prisoner civil rights relief are analytically very different").

--- F.Supp.2d ----
**(Cite as: 2000 WL 863111, \*7 (E.D.Pa.))**

FN20. Plaintiff contends that the policy considerations underlying the exhaustion requirement support plaintiff's assertion that he has exhausted. Specifically, "1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; 2) conserving scarce judicial resources ...; and 3) improving the efficacy of the administrative process." Pl.Resp. at 7 (quoting Nyhuis, 204 F.3d at 75). In support of this assertion, plaintiff argues that he has presented his grievance to three stages of review and the claim has been investigated by prison officials. However, as the facts in this matter demonstrate, plaintiff filed his complaint prior to completing steps two and three of DC-ADM 804 and appealed to intermediate and final review only after defendants raised the exhaustion issue.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

**EXHIBIT "B"**

**POLICY STATEMENT**

**Commonwealth of Pennsylvania ● Department of Corrections**

| Policy Subject:<br><br>**Consolidated Inmate Grievance Review System** | | Policy Number:<br><br>**DC-ADM 804** |
|---|---|---|
| Date of Issue:<br>July 20, 1994 | Authority:<br>Joseph D. Lehman<br>Commissioner | Effective Date:<br>Oct. 20, 1994 |

## I.   AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.   PURPOSE

It is the purpose of this Administrative Directive to establish policy regarding the Consolidated Inmate Grievance Review System and to ensure that inmates have an avenue through which resolution of specific problems can be sought.

This directive sets forth procedures for the review of Inmate Grievances not already covered by other Administrative Directives and policies. It also provides the method through which review procedures established by other directives are to be integrated with the procedures outlined in this directive.

## III.   APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

## IV.   DEFINITIONS

A.   Grievance -

The formal written expression of a complaint submitted by an inmate related to a problem encountered during the course of his/her confinement.

B.   Grievance Coordinator -

The Corrections Superintendent's Assistant in an institution or the Assistant to the Regional Director in Community Corrections who is responsible for the overall administration of the Inmate Grievance System in that facility\region. This includes all data collection, tracking and statistical reporting. At the direction of the Facility Manager or Community Corrections Regional Director, the Grievance Coordinator may be called upon to provide Initial Review of certain grievances.

DC-ADM 804

C. Grievance Officer -

An appropriate Department Head or Management Level staff person designated by the Facility Manager or CC Regional Director to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility, e.g., a Unit Manager would be assigned to provide Initial Review of a grievance from the housing unit.  If the grievance arises from the Food Services Area, the Grievance Officer designated by the Facility Manager shall be the Food Services Manager, likewise, the Corrections Health Care Administrator would be the Grievance Officer for a grievance related to a Health Care issue.

D. Central Office Review Committee (**CORC**) -

A committee of at least three (3) Central Office staff appointed by the Commissioner of Corrections to include the Commissioner, Executive Deputy Commissioner and Chief Counsel or their designees.

With the exception of appeals from disciplinary action under DC-ADM 801 and appeals arising from Health Care or medical treatment grievances, the CORC Shall have responsibility for direct review of all Inmate Appeals for Final Review.

E. Central Office Medical Review Committee (**COMRC**) -

A committee appointed by the Commissioner to include the Director of the Bureau of Health Services and relevant Bureau staff.  The COMRC shall have responsibility for direct review of grievance appeals related to Health Care and medical treatment issues.

F. Initial Review -

The first step in the formal Inmate Grievance Process for all issues except those already governed by other specified procedures (see VI E).  All reviews conducted below the level of Facility Manager or Regional Director are considered initial reviews.

G. Appeal from Initial Review -

The first level of appeal of a decision rendered at Initial Review.  This appeal is directed to the Facility Manager or Community Corrections Regional Director.

**An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.**

**Only issues raised at Initial Review shall be appealed.**

H. Final Review -

Upon completion of Initial Review and appeal from Initial Review, an inmate may seek Final Review from the Central Office Review Committee (**CORC**), for any issue involving continued non-compliance with Department of Corrections directives or policy, the ICU Consent Decree or other law.

# V. POLICY

A. It is the policy of the Pennsylvania Department of Corrections that every individual committed to its custody shall have access to a formal procedure - the Consolidated Inmate Grievance Review System - through which the resolution of problems or other issues of concern arising during the course of confinement may be sought.  For every such issue there shall be a forum for review and an avenue of appeal, but only one.

DC-ADM 804

B. Informal Resolution of Problems - All inmates are expected to attempt to resolve problems or differences with staff on an informal basis through direct contact or by sending a request slip to appropriate staff. Action taken by the inmate to resolve the situation must be indicated on the grievance form, Section B.

The Grievance Form, DC 804, Part I, is available in each Housing Unit or upon request from Unit staff. This is the proper form to be used for submission of a grievance and it should be completed according to the directions provided.

**It is required that a genuine effort be made to resolve the problem before the grievance system is used. The inmate must document these efforts in Section B of the Grievance Form. Failure to do so may result in the grievance being returned to the inmate without action. The inmate may then refile the grievance with Section B properly completed.**

C. Any inmate using the grievance system shall do so in good faith and for good cause.

No one shall be punished, retaliated against or otherwise harmed for good faith use of this grievance system.

Deliberate misuse of the grievance system may result in restricted access or disciplinary action, at the discretion of the Facility Manager.

D. It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review. See VI., C. 1.

E. The Inmate Grievance Review System is intended to deal with a wide range of issues, procedures or events which may be of concern to inmates. It is not meant to address incidents of an urgent or emergency nature. When faced with such an event, the inmate should contact the nearest staff member for immediate assistance.

## VI. PROCEDURES

A. A Grievance shall be submitted to the Grievance Coordinator in the following manner.

1. All grievances shall be in writing and in the format provided on the forms supplied by the institution (DC-804 Part 1). See Section V., B.

2. All grievances shall be presented individually. Any grievance submitted by a group of inmates will not be processed. however, if the Grievance Coordinator believes that the issue being grieved is legitimate, it will be referred to appropriate Management Staff for review.

3. Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance or appeal. The inmate grievant must sign the grievance or appeal.

4. All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text of the grievance must be legible and presented in a courteous manner. The inmate should identify any persons who may have information which could be helpful in resolving the grievance. The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, the ICU Consent Decree or other law. The inmate may request to be personally interviewed prior to the decision on Initial Review. Any inmate who submits a grievance containing false and malicious information may be subject to disciplinary action.

DC-ADM 804

5. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Officer may combine multiple grievances which relate to the same subject.

   **NOTE:** At any point in the grievance process, the inmate has the right to withdraw the grievance.

B. Initial Review

1. Initial Review Procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court.

2. Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause.

3. The Grievance Coordinator will forward the grievance to the appropriate Grievance Officer for investigation and resolution. The inmate grievant and other persons having personal knowledge of the subject matter may be interviewed. A grievant who has requested a personal interview, shall be interviewed.

4. Within ten (10) working days of receipt of the grievance by the Grievance Officer, the grievant shall be provided a written response to the grievance to include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance.

   The Grievance Coordinator may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is pending. If an extension is necessary, the grievant shall be so advised in writing.

C. Appeal from Initial Review

1. An Initial Review Decision of a grievance on a Health Care or medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five (5) days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance.

   All other appeals will be submitted as follows.

2. An inmate may appeal an initial review decision to the Facility Manager or Community Corrections Regional Director in writing, within five (5) days from the date of receipt by the inmate of the Initial Review decision. **The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.**

3. All appeals must conform to the requirements specified in Section VI A of this directive. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted.

4. The Facility Manager or Regional Director must notify the inmate of his/her decision within ten (10) working days after receiving the appeal. This decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.

DC-ADM 804

D. Final Review

1. Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of receiving the decision, appeal any issue related to non-compliance with the ICU Consent Decree, other law, Department directive or policy, for final review. Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

2. Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

3. Final Review of all appeals will be sent directly to the CORC except the following:

   a. Medical Grievances which will be reviewed by COMRC.

   b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801. These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee (CORC) for further reviews.

The address of the **CORC/COMRC** is:

> **PA DEPARTMENT OF CORRECTIONS**
> **CENTRAL OFFICE REVIEW COMMITTEE**
> **PO BOX 598/2520 LISBURN ROAD**
> **CAMP HILL, PA 17001-0598**

4. Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

5. The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

6. The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

7. For all Appeals receiving Final Review, the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal. The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision. The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

8. The Chief Counsel will notify counsel for the ICU class of disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

E. Exceptions

Initial Review and Appeal from Initial Review of issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

1. DC ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.

2. DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I

3. DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI. B, 1,2. Appeal from Initial Review, see DC-ADM 802, VI. B, 4, a.

DC-ADM 804

4.  DC-ADM 814 - Incoming Publications

See 814-IIIB, Appeal from Initial Review, see 814-IIID.

Additionally, there may be other kinds of issues for which Initial Review Procedures have been previously established by Administrative Memorandum or Policy Statement.

F.  Admissions and Review

1.  All proceedings pursuant to this directive are in the nature of settlement negotiations and will, therefore, be inadmissible before any court or other tribunal in support of any claim made against the Commonwealth or any employee. No resolution of any grievance offered as a result of this procedure shall be admissible before any court or other tribunal as an admission of violation of the ICU Consent Decree or any State or federal law.

2.  No decision rendered as a result of the processing of a grievance shall be reviewable by any court unless it establishes a system or institution-wide violation of the decree.

G.  Completion of Review After Transfer

Any inmate who is transferred after the filing of a grievance or appeal, but prior to the completion of the appeal process, may continue to pursue the grievance or appeal by notifying the Facility Manager or Regional Director of the facility in which confined when the grievance was filed. Adjustments in the various time limitations may be made to facilitate review.

## VII.  SUSPENSION DURING EMERGENCY

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

## IX.  SUPERSEDED POLICY AND CROSS-REFERENCE

This directive revises the Inmate Grievance System (DC-ADM 804, MAY 1, 1984), and supersedes the pilot grievance system in effect at selected DOC institutions. It does not supersede or repeal any portion of any other directive or policy statement. Where this directive is inconsistent with any other directive or policy, both shall be interpreted so as to provide full review of all issues raised, consistent with the scope and purpose of this directive. Conflicts will most frequently occur at the Initial Review level, where other directives establish committees to review specific issues.

Cross References:  DC-ADM 801, DC-ADM 802

ACA Cross-References:  3-4271

cc:  Executive Deputy Commissioner Reid
Deputy Commissioner Clymer
Deputy Commissioner Fulcomer
Acting Deputy Commissioner Beard
All Superintendents
CCC Directors (4)
File

Joseph D. Lehman,
Commissioner



|  | Bulletin |
|---|---|
|  | Commonwealth of Pennsylvania Department of Corrections |

| To: | Policy Subject: |
|---|---|
| **Superintendents**<br>**Boot Camp Commander**<br>**Regional Directors**<br>**Executive Staff** | **DC-ADM 804**<br>**CONSOLIDATED INMATE GRIEVANCE**<br>**REVIEW SYSTEM** |

| | Policy Number:   **DC-ADM 804-1** |
|---|---|
| | Policy Issue Date:   **July 20, 1994** |

| Date of Issue:<br>April 2, 1996 | Authority: | Effective Date:<br>May 20, 1996 |
|---|---|---|

The purpose of this Bulletin is to include medical grievances in the regular grievance process and to **discontinue** the Central Office Medical Review Committee (COMRC). .

It is important that the Superintendent be aware of all functions within the institution. Similarly, it is essential that the Bureau of Health Care Services be included in the CORC process, to include review by the Chief Counsel's office with respect to medical grievances. Therefore, all grievances, including those relating to medical issues, are to be processed in the same manner. The grievance coordinator will continue to forward medical grievances to the CHCA for initial review. Then, the Superintendent will be responsible for the Appeal from Initial Review, as for all other grievances.

Final Appeal of medical grievances will no longer be forwarded to the COMRC. The Central Office Review Committee (CORC) will process the appeals. The Director of the Bureau of Health Care Services, or designee, will participate as a member of CORC for all medical grievance appeals.

The following sections of DC-ADM 804 are to be **discontinued:**

IV.E.:   Definition of COMRC

IV.G.:   "An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.

V.D.:   "It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review."



|  | **Bulletin** |
|---|---|
|  | **Commonwealth of Pennsylvania · Department of Corrections** |

| **To:** Executive Staff<br>Superintendents<br>Regional Directors | **Policy Subject:** Consolidated Inmate<br>Grievance Review System |
|---|---|
|  | **Policy Number:** DC-ADM 804-2 |
|  | **Policy Issue Date:** July 20, 1994 |

| **Date of Issue:**<br>October 1, 1997 | **Authority:** | **Effective Date:**<br>November 1, 1997 |
|---|---|---|

The procedures for appeal to final review under DC-ADM 804, VI, D, 5-7, are amended as follows:

(1)  The Chief Hearing Examiner will replace the Central Office Review Committee (CORC) at final review of all grievance appeals. The Chief Hearing Examiner will perform all functions previously performed by CORC.

(2)  In reviewing grievances submitted for final review, the Chief Hearing Examiner will review the initial grievance and response, any appeals therefrom and the responses thereto and the issues appealed to final review.

(3)  The Chief Hearing Examiner will review health care related grievances with the Bureau of Health Care. Appeals raising legitimate legal issues, including but not limited to access to courts and sentencing issues, will be reviewed with an attorney prior to response.

(4)  Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the institution is upheld.

(5)  In all cases where the action of the Grievance Coordinator, PRC, Incoming Publication Review Committee, or Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Commissioner for review and signature.

(6)  The Chief Hearing Examiner will be responsible for assuring that:

    (a)  appeals to final review are responded to in a timely fashion;

    (b)  records pertaining to such appeals are maintained properly; and

    (c)  counsel for the ICU class is notified of the disposition at final review of any matter raised to final review alleging a violation of the ICU vs Shapp Consent Decree.

It is the intent of the Department of Corrections to provide inmates with a complete and timely review of all appeals properly raised to final review. These amendments have been established to ensure timeliness at final review while continuing to provide a thorough, impartial review of the issues.



| To: | Policy Subject: |
|---|---|
| Executive Staff<br>Superintendents<br>CCC Regional Directors<br>Boot Camp Commander | Consolidated Inmate Grievance Review System |

**Bulletin**
Commonwealth of Pennsylvania • Department of Corrections

**Policy Number:** DC-ADM 804-4

**Policy Issue Date:** July 20, 1994

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| April 29, 1998 | Martin F. Horn | May 1, 1998 |

The purpose of this bulletin is to amend the section VI. Procedures, A.4. to read,

"All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text must be legible and presented in a courteous manner. The Grievant should identify any persons who may have information which could be helpful in resolving the grievance. The Grievant may specifically raise any claims concerning violations of Department of Corrections directives, regulations, court orders, or other law. The Grievant may also include a request for compensation or other legal relief normally available from a court. The inmate may request to be personally interviewed at initial review. Any inmate who submits a grievance containing false information may be subject to disciplinary action. Inmates who have not already completed final review may request compensation or legal relief on appeal to final review."

And to amend Section VI. Procedures, B. Initial Review, 2. to read:

"Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause. Such extensions will normally be granted if the events complained of would state a claim of violation of federal right.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOHN CARTER, et al., | : | |
|  | : | |
| **Plaintiffs** | : | |
|  | : | |
| v. | : | 1:CV-00-0834 |
|  | : | |
| MARTIN HORN, COMMISSIONER, | : | (Judge Caldwell) |
| DEPT. OF CORRECTIONS, et al., | : | |
|  | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Seth A. Mendelsohn, Deputy Attorney General, hereby certify that on this date I caused to be served the foregoing, **Documents in Support of Commonwealth Defendants' Motion to Dismiss** by depositing a copy of the same in the United States mail, postage prepaid, in Harrisburg, PA., addressed to the following:

John Carter #CN-1404
SCI-Waymart
Box 256
Waymart, PA 18472

Jimmy McWhirter, #CC-8387
SCI-Waymart
Box 256
Waymart, PA 18472

Mariano Pellot, #BE-2490
SCI-Waymart
Box 256
Waymart, PA 18472

David Campell, #DJ-0505
SCI-Waymart
Box 256
Waymart, PA 18472

Lawrence M. Silverman, Esq.
Jonathan J. Bart, Esq.
Silverman Bernheim & Vogel
2 Penn Center Plaza
Suite 910
Philadelphia, PA 19102
(Counsel for Co-defendants)

Arthur Carmichael, #DD-0875
SCI-Waymart
Box 256
Waymart, PA 18472

**SETH A. MENDELSOHN**
**DEPUTY ATTORNEY GENERAL**

**DATE:  JULY 19, 2000**