IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CARTER, et al.,                    :

                                :

      VS.                    :            1:CV-00-0834

                                :           (Judge Caldwell)

MARTIN HORN, COMMISSIONER,              :

DEPT. OF CORRECTIONS, et al.,     :

             Defendants                :

FILED

AUG 1 4 2000

PER _____
HARRISBURG, PA.   DEPUTY CLERK

EXHIBITS IN SUPPORT OF PLAINTIFFS'' MOTION

IN OPPOSITION TO COMMONWEALTH DEFENDANTS'

<u>MOTION TO DISMISS</u>

JOHN CARTER (PLAINTIFF)

By: _Arthur Carmichael_

Plaintiff, Pro.Per.

P.P.# 00-0875

P.O. Box 256, Route6

Waymart, Pa.  18472-0256

DATED: August 2, 2000 c.e.

EXHIBIT " A "

**DC-804**
PART II



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO.   | **WAM-018-2000**

| TO: (Name & DC NO.)<br>**Carter, John, CN1404** | INSTITUTION<br>**SCI-Waymart** | QUARTERS<br>**L1** | GRIEVANCE DATE<br>**January 28, 2000** |

The following is a summary of my findings regarding your grievance:

During the week of 1/16/2000, you were temporarily housed on C1 during the completion of the window project on the Ls and Ms. During that week, we also experienced extremely cold weather, which affected the temperatures on the housing units as well. Further, there were problems with the heating system, which were reported and repaired by the Maintenance Department. You were issued two extra blankets as we tried to remedy the situation. *~ UNTRUE .*     *UNTRUE - 1 Blanket*

Because of the window project, we had to use cells which we generally try not to use during the winter months because they tend to be colder than the other cells -- not 0 to 10 degrees inside the cells, as you content -- but, sometimes, uncomfortably chilly.

*BECAUSE HE WAS NOT THERE (I, AND OTHER INMATES WERE)*

At no time did I hear officers respond to complaints from inmates in a rude or unprofessional manner. Indeed, they came to me in an effort to find solutions to assist inmates with their legitimate complaints. You were returned to your regular housing unit as expeditiously as possible.

**MEM/kt**

**cc:    Superintendent Colleran**
**File**

| Refer to DC-ADM 804, Section VIII,<br>for instructions on grievance<br>system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR<br>*M. E. Stitt* | DATE<br>*2/2/2000* |

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | WAM-018.200◌

| TO: GRIEVANCE COORDINATOR<br>*Ron Richards* | INSTITUTION<br>*SCI WAYMART* | DATE<br>*1-23-00* |
|---|---|---|
| FROM: (Commitment Name & Number)<br>*John Carter CN-1404* | INMATE'S SIGNATURE<br>*John Carter* | |
| WORK ASSIGNMENT<br>*B.U.* | QUARTERS ASSIGNMENT<br>*L-1 1007 Bed 1* | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

*During the week of 1-16-00 I was transferred to C-unit temporarily while the work was being completed on L-1. I was placed in cell #1035 which is located in the back of the area known As C-wing of C-unit. During those five days my cell mate and myself were made made to endure tempretures of below ten degrees and at so point 0 degrees. When we informed the staff about it we were confronted with complete indifference and lack of concern. Although I am fully aware that this is not a hotel, as I was so rudely informed I do rely on my rights to have heat in the housing unit that I reside in. The only solution I was afforded to remedy the sit- uation was an extra blanket, that did little or no help to afford me and the other twenty in- who were made to suffer any comfort. Although we have sinced moved back to our housing unit my concern is for those inmates who will be placed into those very same cells and who may suffer the long term affects that i have. When I addressed this situation to one of the office his response was that I am waisting my time that this is the way it's always been. (cont.)*

B. Actions taken and staff you have contacted before submitting this grievance:

*Spoke to Depty Wedner & Unit Sgt and was given one (1) extra blanket*

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator

*1/24/00*
Date

**DC-804**
PART 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**                                    GRIEVANCE NO. _WAY C18-2000_

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Ron Richards | SCI WAYMART | 1-23-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| John Carter CN-1404 | John Carter | |
| WORK ASSIGNMENT  B.U. | QUARTERS ASSIGNMENT  L-1 1007 Bed 1 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

During the week of 1-16-00 I was transferred to C-unit temporarily while the work was being completed on L-1. I was placed in cell #1035 which is located in the back of the area known as C-wing of C-unit. During those five days my cell mate and myself were made to endure tempretures of below ten degrees and at so point 0 degrees. When we informed the staff about it we were confronted with complete indifference and lack of concern. Although I am fully aware that this is not a hotel, as I was so rudely informed I do rely on my rights to have heat in the housing unit that I reside in. The only solution I was afforded to remedy the situation was an extra blanket, that did little or no help to afford me and the other twenty in- who were made to suffer any comfort. Although we have sinced moved back to our housing unit my concern is for those inmates who will be placed into those very same cells and who may suffer the long term affects that i have. When I addressed this situation to one of the officer his response was that I am waisting my time that this is the way it's always been. (cont.)

B. Actions taken and staff you have contacted before submitting this grievance:

Spoke to Depty Wedner & Unit Sgt and was given one (1) extra blanket

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                                    1/24/00
Signature of Grievance Coordinator                                    Date

It seems to me that whenever an inmate tenders a grievance to the grievance co-ordinator the solution is always in a negative response to the complaint of the inmate, while the administration is never incorrect. It would ~~due~~ so seem ~~thtxx~~ thesec officers tell one thing while doing another, and in the inmate is always wrong. The fact of the matter is that yes I was placed in a temporary cell that had no heat and held extremely cold temperatures, and that we were not issued two blankets, but only one. Second, those officers that I have addressed the problem too were indeed rude and insensitive, as well as unprofessional in their mannerism. The cell was extremely colder than any other housing unit in this institution, and that not all units were experiencing the same problems as C-unit. That after inquiring as to the conditions of the heating of the other units I found that most everyone I talked to stated that the units were to warm. Yes I can attest to the fact that those temperatures were extremely so much to the point that a certain officer came inside the cell and chipped off some of the ice from the windows. therefore since it is obvious that your statements were made in defense of your staff members, as is always the case at SCI Waymart, it is ~~impxra~~ imperative that I seek other avenues to bring this situation to light, because after spending those 5 days in that cold cell with nothing being done but the issuance of one bonifide blanket, I would hate to hear that other inmates are treated in the same manner, and endure the same results as myself and my cell mate went through. for the record, my cell mate is seventy-four years old. Also for the record, the front cells and offices of staff members were sufficiently heated.

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI WAYMART**
570-488-5811
February 7, 2000

**SUBJECT:**   Appeal to Grievance WAM 018-2000

**TO:**        John Carter
               CN-1404

**FROM:**      Raymond J. Colleran
               Superintendent

I received your appeal to the above-mentioned grievance.  Mr. Richards, my assistant, met with you on February 7, 2000 to discuss the issues raised within your grievance appeal.

While initial grievance response indicated that you received two blankets, we determined that this was inaccurate and, in fact, you only received one blanket.

Your concerns centered more upon the fact that staff did little attempt to resolve the problem.  Despite the fact that it was extremely cold during the time that you were on the C-1 housing unit, other options should have been explored by staff once they were made aware of the problem.  As a result, this matter will be discussed with your unit management staff to ensure this situation does not reoccur in the future.

*AS OF THIS DATE 3/1/00, The cells remain the same (UN-REPAIRED)*

RJC/hck

cc:    Mr. Friedman
       Mrs. Martin

*NEVER RECIEVED MY COPY OF MY GRIEVANCE from which The above response CAME.*

EXHIBIT " B "

*Don Diske*

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | WAM-6171-99

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Supt. Raymond J Colleran | S.C.I. Waymart | 7-26-99 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| CN-1404 John D. Carter | John D. Carter |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| Masonery Crew | L-1 1007 Bed 3 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On or about 3-3-99 I was transferred to Waymart from S.C.I. Somerset, which upon my arr-
-ival I had informed the night officer that I needed a extra mattress as was prescribed by
the medical department as part of my treatment for chronic backpain, the extra mattress
being for support, as was written in my medical file. I was then told to sign up to see the
doctor and that I would be issued a pass to obtain the extra mattress. When I did as instr-
-ucted I was told by the medical department that Waymart does not issue extra because of it
being a security matter. I informed the P.A. (Loomis) that this was part of my treatment
and her response was that of the same so she denied my request. After numerous attempts I
was referred to a Dr. Bekele who as denied my request citing that he is not concerned
with what I had at Somerset that this Waymart and he was in charge and he did not feel
that I needed the extra mattress, something that has helped me for the last four years of
my incarceration that was prescribed and issued by a doctor and is documented in my file.

B. Actions taken and staff you have contacted before submitting this grievance:

P.A. Loomis, refused to grant request, Dr. Bekele same result, Donald Diske CHCA referred
matter back to medical department, officer Panna unit officer referred me back to medical
Dr. Kiraly stated that Waymart does not issue extra mattress for security reasons, inquied
to security commander who stated off record that no such policy existed.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Ronald W. Richards Jr.
Donald R. Foley

Signature of Grievance Coordinator

7-27-99

8-16-99

Date

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | WAM-0171-99

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Supt. Raymond J. Colleran | S.C.I. Waymart | 7-26-99 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| CN-1404 John D. Carter | John D. Carter |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| Masonery Crew | L-1 1007 Bed 3 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On or about 3-3-99 I was transferred to Waymart from S.C.I. Somerset, which upon my arr-ival I had informed the night officer that I needed a extra mattress as was prescribed by the medical department as part of my treatment for chronic backpain, the extra mattress being for support, as was written in my medical file. I was then told to sign up to see the doctor and that I would be issued a pass to obtain the extra mattress. When I did as instr-ucted I was told by the medical department that Waymart does not issue extra because of it being a security matter. I informed the P.A. (Loomis) that this was part of my treatment and her response was that of the same so she denied my request. After numerous attempts I was referred to a Dr. Bekele who as denied my request citing that he is not concerned with what I had at Somerset that this Waymart and he was in change and he did not feel that I needed the extra mattress, something that has helped me for the last four years of my incarceration that was prescribed and issued by a doctor and is documented in my file.

B. Actions taken and staff you have contacted before submitting this grievance:

P.A. Loomis, refused to grant request, Dr. Bekele same result, Donald Fiske CHCA referred matter back to medical department, Officer Panna unit officer referred me back to medical Dr. Kinaly stated that Waymart does not issue extra mattress for security reasons, inquired to security commander who stated off record that no such policy existed.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_Ronald W. Richards Jr._
Signature of Grievance Coordinator

_David R. Toles_

Date  7-27-99
8/6/99

DC-804
PART 1

*Don Fiske*

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**    GRIEVANCE NO.    | WAm-0172-99 |

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Supt. Raymond J. Colleran | S.C.I. Waymart | 7-26-99 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| CN-1404 John Carter | John Carter | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| Masonery crew | L-1 1007 Bed 3 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On or about 7-20-99 I signed up for medical to renew my medication for back pain where as I was referred to a certain Dr. Bekele who at that time did not know by name. Upon be-ing made to wait on him for one hour when he finally had the time to see me I once again inquired about the extra bed mattress that I felt I needed and was assigned at my last institution and he informed me that he was not concerned with what Somerset did that he was in charge here and he did not feel that the extra mattress would help my problem. When I asked why he felt that he knew my body better than I did he stated that he was the doctor and that was the end of the issue. When I asked him for his name he refused to give it to me making a statement that I could ask another staff member that he was not going to give me his name and that I knew his name although I had informed him that it was no so. His attitude towards myself and all other blacks here borders upon prejudice and arrigance that is offensive in nature as it was intended to be disrespectful.

B. Actions taken and staff you have contacted before submitting this grievance:

Talked to officer assigned to desk where he afforded me the name of the doctor.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Ronald W. Richards Jr.
_____
Signature of Grievance Coordinator
Donald R. Tulce

Date   8/6/9

DC-804
PART 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO. | WAM.0172-99 |

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
| Supt. Raymond J. Colleran | S.C.I. Waymart | 7-26-99 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
| CN-1404 John Carter | John Carter |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
| Masonry crew | L-1 #007 Bed 3 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On or about 7-20-99 I signed up for medical to ~~xxx~~ renew my medication for back pain where as I was referred to a certain Dr. Bekele who at that time did not know by name. Upon be-ing made to wait on him for one hour when he finally had the time to see me I once again ~~inquired about the extra bed mattress that I felt I needed and was assigned at my last~~ institution and he informed me that he was not concerned with what Somerset did that he was in charge here and he did not feel that the extra mattress would help my problem. When I asked why he felt that he knew my body better than I did he stated that he was the doctor and that was the end of the issue. When I asked him for his name he refused to give it to me making a statement that I could ask another staff member that he was not going to give me his name and that I knew his name although I had informed him that it was no so. His attitude towards myself and all other blacks here borders upon prejudice and arrigance that is offensive in nature as it was intended to be disrespectful.

B. Actions taken and staff you have contacted before submitting this grievance:

Talked to officer assigned to desk where he afforded me the name of the doctor.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Ronald W. Richards
Signature of Grievance Coordinator

Date

**DC-804**
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17011**

**OFFICIAL INMATE GRIEVANCE**                    **GRIEVANCE NO.  99-0171**
**INITIAL REVIEW RESPONSE**                                          99-0172

| To: (Name & DC NO) John Carter #CN-1404 | INSTITUTION SCI-WAYMART | QUARTERS L-1 | GRIEVANCE DATE 7-26-99 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

I am in receipt and have investigated both of your grievances. Since these grievances address the same issue, I will address both with this response.

*July 30th 2:45*

On August 3, 1999, we met in my office to discuss these grievances, at that time we reviewed your medical record and discussed the treatment you have received while at this institution.

As I have pointed out to you, to date, you have been seen by Mrs. Loomis, PA-C and Dr. Bekele, Medical Director. It has been the medical opinion of both professionals that you do not require an extra mattress.

You informed me that it was your opinion that Dr. Bekele didn't thoroughly examine your medical record enough to determine what your needs are. You further stated that you didn't think Dr. Bekele was aware of x-ray results you had in the past. During the time we reviewed your medical record, I pointed out that Dr. Bekele did indeed document in his note your x-ray results. *I DID, ON MONDAY 8-2-99* I

At the time of our meeting, I instructed you to sign up for sick call the following day and I would go with you to see Dr. Bekele. To date (8-6-99), you have not signed up as I have instructed.

Your complaint concerning Dr. Bekele's alleged attitude towards yourself and other blacks that borders upon prejudice and arrogance in my opinion is unwarranted. Your complaints of this issue is the first of its kind and personally knowing Dr. Bekele I find it very unlikely. I have spoken with Dr. Bekele concerning your allegations and he totally denies any type of this behavior.

*in error*

*NOTE: I was instructed to sign up for sick-call on 8-2-99, which I did. He further instructed me to give officer Pierce his Business card and have him call when I arrived on the 2nd. Said officer did call his office three times without finding him in office. So Mr. Fick's statements herein are false, as was later proven in the Appeal to the Superintendent as noted on the attached page.*

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR | DATE |
|---|---|---|
| | *Donald R. Fick* | 8/10/99 |

John Carter #CN-1404                        **GRIEVANCE NO. 99-0171**
Page 2                                                          99-0172

Since you haven't signed up for sick call, I will consider the matter concerning your examination closed. In the future, when seeing Dr. Bekele or any other medical staff and you feel you are being treated unfairly, I am instructing you to immediately notify either the Nursing Supervisor, Area Lieutenant or myself at the time of the occurrence.

If I may be of further assistance to you in this matter, please feel free to contact me through your Unit Manager.


cc: Mr. Richards
    Mr. Friedman
    File

C:\DATA\WPDOCS\DEBS\IM-GRIEV.99\CN1404.WPD

*The following appeal documented the facts substantiating the false and misleading statements set forth in the forgoing Response*

*Appealed*
*Filed 8-11-99*

*Appeal was signed by Grievant copy never returned, received no response.*

EXHIBIT " C "



**Bulletin**
**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Executive Staff Superintendents Regional Directors | Policy Subject: Inmate Grooming and Hygiene |
|---|---|---|

| Policy Number: | DC-ADM 807-3 |
|---|---|
| Policy Issue Date: | July 18, 1994 |

| Date of Issue: July 22, 1997 | Authority: | Effective Date: July 22, 1997 |
|---|---|---|

The following addition to the DC-ADM 807, Inmate Grooming and Hygiene policy is being made regarding an inmate request for a "haircut exemption on the basis of religious conviction".

All inmates who request a haircut exemption on the basis of religious conviction must supply something in writing confirming the inmate's participation in the particular religion. This can be a certified letter from the religious leader of that particular faith group, or in the case of Native Americans, a certificate of participation from a recognized Chief or tribal leader. The letter or certificate must indicate that the inmate in question has demonstrated a history adhering to the tenets of the particular faith group.

I WAS TOLD THE TRIBE HAS TO BE INCORPERATED!

THERE ARE MANY MANY TRIBES THAT ARE NOT INCORPERATED AND IT DOES NOT MAKE IT ANY LESS A TRIBE OF NATIVE AMERICAN INDIAN!

Daisy Lee McWhirter
6050 Autumn Hills Dr.
Ft. Worth, Texas 76140


Reverend Dale Pepper
Chaplaincy Office
P.O.Box 256
Waymart, Pa 18472


RE: Question of Blood Line and Religion:


Dear Reverend Pepper;
  For many years I travelled to different reservations and
different tribes of Indigenous Peoples.
In the European societies I would be called Native American
Missionary. To the Indigenous People I would be called a Medicine
Woman. My calling was from God ( The Great Spirit ) not from man.
I was called to help the Indigenous People and teach them how
to pray and tell them of God's wondrous powers. I was called
to pray for their sick and teach them how to have faith in
their God. My son has practiced the Indigenous Religion for
many years and I am proud that my son is a child of God and
is not ashamed of it. Reverend Pepper, if Jimmy Lee can make
a difference in the Sacred Circle by all means don't let the
Institution discourage him or the other men from praying and
trying to serve God just because they are in prison. I have
been retired for a long time and I am glad my son wants to
carry on God's work where I have left off. Reverend Pepper,
my ancestors are of Cherokee Decent and my son is one forth
Cherokee Blood. We do not recognize anything but our Indian
Blood. If you have any questions my address is listed at the
top of the page, and you can feel free to write me at any time.


                              God bless you


                              Daisy Lee McWhirter

                              *Daisy Lee McWhirter*

Larry "Black Cloud" Walters
Shaman to the
Tsalagiyi Nvdagii Cherokee, in Texas
P.O.Box 1104
Weatherford, Texas 76086

To: Rev. Dale Pepper;

     I am the Shaman for the Tribe Listed above. We are not Federally Recognized nor do we go by UkR Membership Ordinance 90 UKB-16, 16 September 1990, but we do require an applicant for enrollment into our Tribe to prove direct decendancy from a person who was listed on the Baker Roll of 1924 and have a minumum 1/6 blood quantum.

     Rev. Pepper as I said in my Last letter, Jim McWhirter was under my teachings berfore going to the Ironhouse in Pa., and I am certain he will continue to learn the ways of our people. I am in hopes that the Institute will issue Jim " Gray Wolf" McWhirter all privileges and or exemptions so he can practice his religious beliefs with pride and dignity as others in or out of the Ironhouse should be able to do so. Also as I said in my last letter if there is any more information needed feel free to write me at the adrdr4ess noted at the top of this letter.

SHO-NO BISH:

SHAMAN

EXHIBIT " D "

EXHIBIT " D-1 "

| DC-138A | |
|---|---|
| **CASH SLIP** | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |

| 1. REQUISITIONING INMATE | John Sturgis | |
|---|---|---|
| INSTITUTIONAL NUMBER DD-6392 | LOCATION L-1 | DATE 3-25-2000 |

| 2. RECEIVING INMATE | | |
|---|---|---|
| INSTITUTIONAL NUMBER | LOCATION | DATE |

**3. ITEMS TO BE CHARGED TO MY ACCOUNT**

Please take off postage for this card!

Thank You

3796.00
10-30
L-1

| 4. INMATE'S SIGNATURE John Sturgis | 5. OFFICIAL APPROVAL |
|---|---|

**6. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED $ .99 | DATE | BOOKKEEPER MAR 28 2000 06 |
|---|---|---|

| DC-138A **CASH SLIP** | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

**1. REQUISITIONING INMATE** John Stucci's DD-6392

| INSTITUTIONAL NUMBER DD-6392 | LOCATION L-1 | DATE 3-16-2000 |
|---|---|---|

**2. RECEIVING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|

**3. ITEMS TO BE CHARGED TO MY ACCOUNT**

Please take off postage for this card !

Thank You

NOTE
Two (2) "Thinking of You" CARDS
SAME SIZE & weight. But,
Charged different Postage Prices

APPROVED REQUEST
NO. 18
DATE 3-15-00
OFFICER Mackett
TIME 2100
UNIT L-1

| 4. INMATE'S SIGNATURE John Stucci | 5. OFFICIAL APPROVAL |
|---|---|

**6. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED $ 77 | DATE | BOOKKEEPER MAR 16 2000 DB' |
|---|---|---|

EXHIBIT " E "

**DC-135A**

RECEIVED

2000 JUL 27 AM 9:21

SUPERINTENDENT'S OFFICE
SCI WAYMART

RECEIVED
JUL 27
SCIWM
BUSINESS OFFICE

**COMMONWEALTH OF PENNSYLVANIA**
DEPARTMENT OF CORRECTIONS

**INMATE'S REQUEST TO STAFF MEMBER**

INSTRUCTIONS

Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.

| 1. TO: (NAME AND TITLE OF OFFICER) | | 2. DATE |
|---|---|---|
| RAYMOND COLLERAN  ( Superintendent ) | | 7-26-00 |

| 3. BY: (INSTITUTIONAL NAME AND NUMBER) | 4. COUNSELOR'S NAME |
|---|---|
| ARTHUR CARMICHAEL  # DD - 0875 | Mr. Ross |

| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT |
|---|---|
| Bu/LI | L - 1 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

Dear Sir:

This request relates to an emergency matter involving the following case, John Carter, et al, V. Martin Horn, et al.1:CV-00-0834. On July 19,2000,  the Commonwealth Defendants  filed a Motion To Dismiss, to which the Plaintiffs must respond to on or before July 28 to 31, 2000. as a Principal and Legal representative, it is my duty to respond to the Defendants' Motion.    THE  PROBLEM: I AM INDIGENT, and therefore unable at this time to pay the cost of Photocopying vital documents required in in support of our response;  Consequently, I am requesting that you will issue an ORDER upon the necessary Party/s/, to allow me to photocopy (AGAINST MY ACCOUNT) Six (6) dollars Photocopy credit.., lest I be denied timely access to the Court.  I thank you for your consideration.

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Mr Carmichael

Please see attached policy. You do

NOT meet the criteria for indigent.

NOTE: ON 7/27/00, I filed a Grievance on the above matter: Explaining that in this instant case" The Superintendent should have granted the request as an "Exception" to the attached "Indigent Rule"; Because, ONE, the EMERGENCY nature of request, And, fact that, There IS NO RULE relating to Photocopying against inmate's account (TO DATE: No Response to Grievance)

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | DATE |
|---|---|
| Walter W. Colleran | 7/27/00 |



**POLICY STATEMENT**

Commonwealth of Pennsylvania ● Department of Corrections

| Policy Subject: PROVIDING INDIGENT INMATES WITH POSTAGE AND STATIONERY FOR USE IN THE PREPARATION OF LEGAL DOCUMENTS | Policy Number: 7.13.1. |
|---|---|
| Date of Issue: February 26, 1993 | Authority: | Effective Date: March 26, 1993 |

## I.    AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.    PURPOSE

The purpose of this policy is to establish a method to evaluate requests by inmates for financial assistance in order to provide indigent inmates with postage and stationery for use in the preparation of legal documents.

## III.    APPLICABILITY

The policy and procedures set forth in the document shall apply to all Department of Corrections facilities and Community Corrections Centers.

## IV.    DEFINITIONS

**"Indigent Inmate"** - An inmate shall be deemed indigent if the combined balances of his institutional account and any other accounts are $10.00 or less at all times during the thirty (30) days preceding the date on which the inmate submits a request to a person designated by the Superintendent. Any inmate who refuses available work, although he is physically able and is not precluded from work by virtue of his housing status, is not indigent for the purposes of this memorandum and is not eligible for free stationery or to anticipate for postage. Inmates who are self-confined may also be considered as refusing available work although physically able as determined by the Program Review Committee. Any inmate who has funds in another account, which if deposited in his institutional account would bring his balance to more than $10.00, is not eligible. Any inmate who has not made a good

1



U.S. POSTAL INSPECTION SERVICE

# Mail Fraud Report

*See Privacy Act Statement on Page 3*

## Complainant Information

| Your Name ARTHUR CARMICHAEL [ DD-0875 ] | SSN* 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 | Year of Birth* 7-17-25 |
|---|---|---|

| Address P.O. BOX 256 | | | |
|---|---|---|---|

| City WAYMART, | State PA | ZIP Code 18472 | Country USA |
|---|---|---|---|

| Home Phone No. *(Include Area Code)* N/A | Work Phone No. *(Include Area Code)* N/A | E-Mail N/A |
|---|---|---|

*These two fields are optional, but the information may be helpful to Postal Inspectors tracking your complaint. Also, penalties may increase when certain crimes target particular age groups.

## Complaint Filed Against

| Company Name SCI-WAYMART Mail Services | Person's Name and Title Lillian Rollison [Mail Inspector Super. |
|---|---|

| Address ●●●●●●●●●●●●●●●● P.O. BOX 256 | | | |
|---|---|---|---|

| City WAYMART, | State PA | ZIP Code 18472 | Country USA |
|---|---|---|---|

| Home Phone No. *(Include Area Code)* N/A | Work Phone No. *(Include Area Code)* N/A | E-Mail N/A |
|---|---|---|

| Fax No. *(Include Area Code)* N/A | Web Address N/A |
|---|---|

## Details of Mail Fraud Complaint

| Did You Lose Money? UNKNOWN AT PRESENT | What Was the Advertised Cost of the Offer? |
|---|---|
| [X] Yes. If so, how much?   [ ] No | For FIRST CLASS MAIL |

| How Did You Pay? *(Check one)* [ ] Postal Money Order [ ] Electronic Transfer [ ] Debit Card | Date of Payment |
|---|---|
| [ ] Cash [ ] Check [X] Other Money Order [ ] Credit Card [ ] Telephone Bill | 1-7-2000 |

Find the General Category Below that Describes Your Area of Concern, and Check the Specific Item. *(Check one only)*

**Advance Payment**
[ ] Loan
[ ] Credit Repair/Debt Consolidation
[ ] Credit Card
[ ] Student Loan
[ ] Mortgage

[ ] Chain Letter

[ ] Charity Fraud

**Education**
[ ] School
[ ] Degree

**Employment**
[ ] Postal Job
[ ] Overseas Job
[ ] Work at Home *(Such as envelope stuffing)*
[ ] Distributorship/Multilevel Marketing

**False Bill or Notice**
[ ] Office Supplies
[ ] Directory Solicitation
[ ] Subscription/Periodical
[ ] Classified Ad
[ ] Taxes

[ ] Harassment *(Merchandise ordered in your name without your consent.)*

**Investment**
[ ] Real Estate
[ ] Gems, Coins, Precious Metals
[ ] Securities

**Lottery** *(You pay to play.)*
[ ] Domestic
[ ] Foreign

**Medical Quackery**
[ ] Weight Loss
[ ] AIDS Cure
[ ] Cancer Cure
[ ] Sexual Aid

**Merchandise or Service**
[ ] Failure to Pay
[ ] Failure to Provide
[X] Misrepresentation of Product/Service

[ ] Nigerian Fraud

**Personals**
[ ] Mail-Order Bride
[ ] Dating Service
[ ] False Divorce Decree

[ ] Prize or Sweepstakes

[ ] Sexually Oriented Advertisement

[ ] Vacation or Travel

On What Date Did You Receive the Solicitation?

PS Form 8165

**How Were You Contacted?** *(Check one)*

- ☐ U.S. Mail
- ☐ Newspaper
- ☐ Radio/TV
- ☐ Internet
- ☐ Fax
- ☐ Telephone
- ☐ Magazine
- ☐ In Person
- ☐ E-Mail
- ☐ Other

| If by Mail, Do You Have the Envelope It Was Mailed in? | Does the Envelope Have a Permit Number Instead of a Stamp? |
|---|---|
| ☐ Yes ☐ No | ☐ Yes; Permit No.: _____ ☐ No |

| Does the Envelope Have a Postage Meter Number Instead of a Stamp? | How Did You Respond to the Offer? |
|---|---|
| ☐ Yes; Meter No.: _____ ☐ No | ☐ U.S. Mail ☐ Telephone ☐ Internet ☐ E-Mail ☐ Fax |

**Do You Have a Mailing Receipt From Your Response (Such as for certified, insured or Express Mail)?**

☐ Yes; Mail Receipt No.: _____    ☐ No

**To What Address Did You Mail Your Response?**

**What Did You Receive?**

**How Did It Differ From What You Expected?**

| Do You Have the Item? | How Was It Delivered? |
|---|---|
| ☐ Yes ☐ No | ☐ U.S. Mail ☐ Private Courier ☐ In Person |

**Have You Contacted the Company or Person About the Complaint?**

☒ Yes

Date of Last Contact: **1-20-2000**

- ☐ No. Why?
- ☐ Delivery Attempted, Returned Endorsed Moved, Left No Address
- ☐ Unanswered Telephone
- ☐ Disconnected Telephone
- ☐ Unlisted Telephone
- ☐ Address Unavailable

Legitimate businesses appreciate feedback. Check the offer for the delivery time frame, usually 6 to 8 weeks, and then contact the company. Please wait 2 weeks after contacting them before sending us this form. When a delivery time is not specified, a Federal Trade Commission rule mandates fulfillment within 30 days, unless you applied for first-time credit with the company.

**Additional Information You Feel Is Important**

On 1-7-2000, I, Arthur Carmichael- John Carter- Mariano Pellot- David Campbell - and Jimmy McWhirter: All Plaintiffs, in the case of: ▓▓▓▓▓▓▓▓▓ ▓▓▓▓ Carter et al V. Horn et al é 99=CV-6517, each placed in the Prison Mail 4 identical parcels of mail, and each weighing the same: to be sent 1st Class Mail. Each Plaintiff attached the required DC-138A§ CASH SLIP] Nevertheless, each of us was charged a different price scale for the same 4 parcels of legal mail as follows: Arthur Carmichael #8.36; John Carter $ 9.14; Mariano Pellot # 7.48; David Campbell $3.74; Jimmy McWhirter $7.48. FURTHERMORE, to show an even greater variance in price for 1st Class Mail: On 12-20-99, Plaintiff Carter; placed for 1st Class mailing 22 Complaints @49pps.ea; 22 Motions, 22 385 Marshals Forms, at only$7.40.

| Print Your Name | |
|---|---|
| ARTHUR CARMICHAEL __ #DD-0875 | Today's Date _____ , 2000 |

Thank you for completing this form. Please mail it with copies *(not originals)* of any bills, receipts, advertisements, canceled checks (front and back) or correspondence related to your report to the address below.

The U.S. Postal Inspection Service is a federal law enforcement agency. Postal Inspectors gather facts and evidence to determine whether a violation has occurred under the Mail Fraud or False Representation Statutes. While the Postal Inspection Service can't guarantee that you'll recover money lost to fraud, the information can help alert Inspectors about new fraud schemes and prevent others from being victimized.

Postal Inspectors base mail fraud investigations on the number, substance, and pattern of complaints received from the public; therefore, we ask you to keep all original documents relating to your complaint, including the solicitation, any mailing envelopes, and canceled checks. Under our Consumer Protection Program, Postal Inspectors may contact individuals or businesses on your behalf to request that complaints be resolved. We will contact you if more information is needed.

Postal Inspectors caution that, once you've been targeted in a fraud scheme, your name may be passed along to other con artists, so beware of future solicitations. If you know of others who believe they were

victimized in a fraud scheme, we recommend that you encourage them to submit a Mail Fraud Report as well.

Avoid being a victim: Postal Inspectors recommend that, before completing a business transaction, contact the Chamber of Commerce, Better Business Bureau, or county or state Office of Consumer Affairs in the area where the firm is located to get any information available on the company. If you have Internet access, you can get information from the Better Business Bureau online at: www.bbb.org, and from the individual state Attorneys General Consumer Protection Divisions at www.naag.org. Also, check the Postal Inspection Service Web site at: www.usps.gov/postalinspectors for more information on fraud schemes that involve the use of the mail.

**Remember: If a deal sounds too good to be true, it probably is!**

Please return this form to your postmaster, or mail to this address:

INSPECTION SERVICE SUPPORT GROUP
222 S RIVERSIDE PLAZA STE 1250
CHICAGO IL 60606-6100

PS Form **8165**, January 1999 *(Page 2 of 3)*

**Privacy Act Statement:** The collection of this information, which will be used to address your complaint, is authorized by 39 USC 404, 18 USC 3061, and 5 USC, App. 3. It may be disclosed to an agency that requests information in the course of a background check; to an appropriate government agency, domestic or foreign, for law enforcement purposes; if pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, adminstrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act; to an appropriate foreign or international law enforcement agency, organization or individual for investigative or prosecutorial purposes; to assist in crime prevention or detection; to obtain information relating to a pending investigation, trial or hearing; to obtain the cooperation of a witness or informant, or to notify the status of the case; to a party or their attorney to discuss settlement, plea bargaining or discovery proceedings; to an agency or individual concerned with maintenance, extradition or release of a person held in custody; to a foreign country pursuant to an international treaty, convention or executive agreement; to the public, news media, trade associations or organized groups, if it is of interest, on accomplishments of the Postal Service or its employees; to a foreign country when apprehending or returning a fugitive to a jurisdiction seeking return; to American Insurance Association Index System members if it relates to accidents or injuries; or to elicit information from or alert organizations or individuals that share an electronic bulletin board with respect to potential criminal activity. Completion of this form is voluntary; however, the Postal Inspection Service may not be able to address your complaint if the information is not provided.

**DC-804**
PART II

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P. O. BOX 598
CAMP HILL, PA. 17011

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO. | WAM 0017~20

| TO: (Name & OC NO.) Carmichael A   DD-0875 | INSTITUTION SCI Wam | QUARTERS L1 | GRIEVANCE DATE 1-19-00 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

I have received your grievance concerning your mail.

The mailroom has a scale that is adjusted to match the U.S. Postal Service. We only charge what our scale show us to charge. We have no knowledge of contents of individuals mail

By Plaintiff → NOTE : If Contents are EXACTLy the Same; then it follows (or Should follow) that irregardless of which scale were used each package would weigh the same.

Plaintiff did not follow up on appeal, because since the matter is about money only, it needs no grievance before filing on the matter in Federal Court. (I filed Mail Fraud Complaint): –
ABDUL-V. LICHTENBERGER, 518 F. Supp. 673, 675 (E.D. VA. 1981)

Refer to OC-ADM 804, Section VIII, for instructions on grievance system appeal procedures.

SIGNATURE OF GRIEVANCE COORDINATOR
Lilian Collison

DATE
5-5-00

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO. | WM-0017-2000

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. R. RICHARDS | SCI - WAYMART | 1 - 19-2000 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| ARTHUR CARMICHAEL [ DD-0875 ] | *Arthur Carmichael* |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| BU/UT | L-1 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

This grievance is in reference to four (4) parcels of

Legal Mail; ( each envelope containing One Petition of 49 sheets of paper,

plus 2 extra sheets of paper): to which was attached a DC-138A CASH SLIP,

for FIRST CLASS Postage (for legal mail) be taken from my account. said

CASH SLIP was dated 1-7-00; And, approved as no. 15, by L-1 Officer;

Subsequently, on 1-10-2000, I received a copy of the CASH SLIP, SHOWING

that the amount charged against my account was $8.36; Thus,

the basis for this grievance is as follows: On 1-7-00, each of us

Plaintiffs; Namely, John Carter, Mariano Pellot, David Campbell, Jimmy

McWhirter, and Authur Carmichael; placed in the mail exact duplicates of

4 Legal Envelopes containing 51 sheets of Paper, with CASH SLIP requesting

that they be charged for 1st Class Postage, for Legal Mail.*SEE ATTACHMENT:

B. Actions taken and staff you have contacted before submitting this grievance:

** A REQUEST WAS SUBMITTED TO THE MAIL ROOM SUPERVISOR.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                                        1/20/2000
Signature of Grievance Coordinator                                    Date

DC-804
PART 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. R. RICHARDS | SCI-WAYMART | 1- 19-2000 |

FROM: (Commitment Name & Number)
ARTHUR CARMICHAEL [ DD-0875 ]

INMATE'S SIGNATURE
*Arthur Carmichael*

WORK ASSIGNMENT
BU/UT

QUARTERS ASSIGNMENT
L-1

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

( ATTACHMENT )

PLAINTIFFS: JOHN CARTER WAS CHARGED ~~$37888~~ $ 9.14

MARIANO PELLOT  """"  $ 7.48

JIMMY McWHIRTER """"  $ 7.48

DAVID CAMPBELL  """"  $ 3.74  and

ARTHUR CARMICHAEL """"  $ 8.36

Consequently, my request is that your Office please explain why the discrepancy/variance of costs for the same identical parcels of mail; And, put to rest my belief that I, and/or the other Plaintiffs in the prevailing case of Carter. et al; v. Horn et al, NO.99-CV-6517, were incorrectly charged for the parcels of mail. *Respectfully Submitted*

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator                    Date